219 P.3d 971 (2009)
STATE of Washington, Respondent,
v.
Daniel Gerald SNAPP, Appellant.
No. 37210-0-II.
Court of Appeals of Washington, Division 2.
November 9, 2009.
*972 Sheri Lynn Arnold, Attorney at Law, Tacoma, WA, for Appellant.
Stephen D. Trinen, Pierce County Prosecutors Ofc., Tacoma, WA, for Respondent.

PUBLISHED IN PART OPINION
BRIDGEWATER, P.J.
¶ 1 Daniel Gerald Snapp entered a Newton[1] *973 plea to six counts of second degree identity theft on November 16, 2007. Within the plea agreement, the prosecutor's handwritten recommendation includes language stating that Snapp could appeal the trial court's decision regarding his CrR 3.6 suppression motion. Even though Snapp does not appeal the voluntariness of his plea, we hold that the State waived any objection to Snapp's appeal of the trial court's denial of his motion to suppress by including that language in his statement on plea of guilty. We also hold that under Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the search incident to arrest that resulted in the collection of evidence of identity theft was proper because the officer searched the car for evidence related to the crime for which Snapp was arrested. In the unpublished portion of this opinion, we also reject Snapp's argument that the officer's stop was pretextual. We affirm the convictions.

FACTS
¶ 2 At approximately 8:00 am on July 22, 2006, Washington State Trooper Keith Pigott observed a blue Ford Escort driving eastbound in the lane next to him. He initially noticed some debris hanging from the rearview mirror. As he got closer to the vehicle, Trooper Pigott thought that the seat belt was patched together with what appeared to be an aluminum rock-climbing carabiner. As a result, Trooper Pigott dropped back behind the Escort and pulled the car over.
¶ 3 The driver, later identified as Snapp, pulled into the Silver Dollar Casino parking lot. Trooper Pigott observed Snapp lean forward, as if hiding something under the seat. Trooper Pigott called for assistance, then approached Snapp and asked for his driver's license, registration, and proof of insurance. Snapp did not have a license, but he provided his Washington State Department of Corrections inmate identification card. Snapp quickly opened the glove box, grabbed the registration, and immediately closed the glove box. Nevertheless, Trooper Pigott observed what appeared to be a plastic bag with white powder in the glove box. The trooper, who is a drug recognition expert, also believed Snapp was under the influence of drugs because of his fidgety, restlessness, quick, and jerky movements.
¶ 4 Based on these observations, Trooper Pigott asked Snapp to exit the car. After he asked Snapp if he had any weapons, Snapp produced one knife voluntarily and Trooper Pigott recovered another knife during a pat down. He then conducted a field sobriety test and concluded that Snapp exhibited signs of someone who was under the influence but not to the point where Trooper Pigott believed an arrest was warranted. Trooper Pigott asked Snapp if there were any drugs or paraphernalia in the car. Snapp admitted there was a methamphetamine pipe but no methamphetamine. Trooper Pigott retrieved the pipe from underneath the driver's seat.
¶ 5 Subsequently, Trooper Pigott advised Snapp of his Miranda[2] rights, arrested Snapp for drug paraphernalia, and placed Snapp in the trooper's patrol car. In addition, a driver's license check revealed that Snapp's license was revoked [and he had a no-bail felony warrant]. Meanwhile, a second trooper arrived on the scene and removed the passenger from the car.
¶ 6 Trooper Pigott searched the car incident to Snapp's arrest. During the search, he recovered a clear, plastic, blue accordion file folder with items containing persons' identities. In addition, he found a black compact disc (CD) wallet containing identification cards and credit cards of various other people.[3] Neither the accordion file nor the CD wallet was locked or capable of being locked. The trooper was not looking for weapons, nor was he concerned that either item contained evidence that could be immediately destroyed. But he was searching for *974 drugs. In addition, Trooper Pigott found three credit cards not belonging to Snapp in Snapp's wallet. Finally, Trooper Pigott folded down the back seat of the car and observed in the trunk area a large number of items. Snapp stated that the items were not his and that he had borrowed the car from his girlfriend. At that point, Trooper Pigott stopped his search, had the car impounded, and obtained a search warrant for the items in the rear of the car.
¶ 7 The State charged Snapp with one count of first degree identity theft and twenty-one counts of second degree identity theft. The following July, Snapp filed a motion to suppress evidence, contending that (1) Trooper Pigott did not have probable cause to stop the car Snapp was driving for obstructed vision or defective equipment, (2) the search of the car was illegal, and (3) it exceeded the legal scope of a search incident to arrest. On October 3, 2007, after a CrR 3.6 hearing, the superior court denied Snapp's motion.
¶ 8 On November 16, 2007, the State filed an amended information, charging Snapp with six counts of second degree identity theft. That same day, Snapp entered a Newton plea, in which he pleaded guilty to all six counts. On Snapp's statement of defendant on plea of guilty, the prosecutor included a handwritten statement stating: "Alford [defendant] can appeal 3.6 motion." CP at 48. Snapp, his defense counsel, the prosecutor, and the trial court failed to address this notation during the plea and sentencing hearing. In fact, during the standard colloquy with the trial court, Snapp admitted that the declaration of probable cause established facts sufficient for a trial court to find him guilty of all six charges.
¶ 9 Snapp appeals the trial court's denial of his CrR 3.6 motion to suppress evidence.[4]

ANALYSIS

I. Appealability
¶ 10 As an initial matter, we must determine whether we can reach the merits of Snapp's appeal, given that he entered a guilty plea. The State maintains that Snapp's plea was voluntary and thus he waived his right to appeal pretrial motions.
¶ 11 Generally, a voluntary guilty plea acts as a waiver of the right to appeal. State v. Smith, 134 Wash.2d 849, 852, 953 P.2d 810 (1998). "Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." In re Pers. Restraint of Isadore, 151 Wash.2d 294, 297, 88 P.3d 390 (2004). Moreover, a valid guilty plea generally waives all constitutional violations that occurred before the guilty plea, except those related to the circumstances of the plea or to the State's legal power to prosecute regardless of factual guilt. Smith, 134 Wash.2d at 853, 953 P.2d 810; see also State v. Amos, 147 Wash.App. 217, 225, 195 P.3d 564 (2008). When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary. Smith, 134 Wash.2d at 852, 953 P.2d 810. But a plea is not voluntary when the defendant, his or her attorney, and the trial court labor under a false impression that the defendant has a right to appeal. Smith, 134 Wash.2d at 853, 953 P.2d 810. The sole remedy available for an involuntary plea is for the appellate court to reverse and remand to the superior court to allow Snapp an opportunity to withdraw his guilty plea. State v. Lusby, 105 Wash. App. 257, 263, 18 P.3d 625, review denied, 144 Wash.2d 1005, 29 P.3d 718 (2001); see also State v. Olson, 73 Wash.App. 348, 353, 869 P.2d 110, review denied, 124 Wash.2d 1029, 883 P.2d 327 (1994).
¶ 12 This case presents a curious scenario because Snapp does not appeal the voluntariness of his plea. Rather, he appeals the superior court's CrR 3.6 rulings and does not assign error to his plea agreement. In his reply brief, however, Snapp cites Olson for the proposition that he has a right to appeal his pretrial motion.
¶ 13 Olson is distinguishable from the facts presented here. In Olson, the parties *975 agreed during oral argument before this court that Olson had not intended to enter a guilty plea. Olson, 73 Wash.App. at 353, 869 P.2d 110. Instead, the defendant had intended to have a bench trial on stipulated facts. Olson, 73 Wash.App. at 353, 869 P.2d 110. The Olson court then distinguished a stipulated bench trial from a guilty plea, stating, "In a bench trial on stipulated facts, it is the trial court, not the defendant, that makes the determination of guilt or innocence. Unlike a guilty plea, a stipulation preserves legal issues for appeal." Olson, 73 Wash.App. at 353, 869 P.2d 110.
¶ 14 Contrary to the circumstances of Olson, there is no evidence or admission here that Snapp intended to engage in a stipulated bench trial rather than to plead guilty to the charges. The verbatim report of proceedings from the plea and sentencing hearing, held on November 16, 2007, clearly show that Snapp intended to plead guilty to six counts of second degree identity theft. And Snapp does not argue that he did not intend to plead guilty in his appellate briefs. Accordingly, Olson does not aid Snapp in his argument that he has a right to appeal his pretrial motion.
¶ 15 The circumstances in Smith are closer to the circumstances presented here. In Smith, the State charged the defendant with possession of cocaine. Smith, 134 Wash.2d at 851, 953 P.2d 810. The defendant moved to suppress the cocaine evidence, claiming that officers illegally seized him. Smith, 134 Wash.2d at 851, 953 P.2d 810. The trial court denied Smith's motion, and Smith subsequently pleaded guilty, assuming that he could appeal the suppression ruling. Smith, 134 Wash.2d at 851, 953 P.2d 810. Defense counsel even stated in court that the defendant was reserving his right to appeal the suppression ruling. Smith, 134 Wash.2d at 851, 953 P.2d 810. The plea agreement, however, by its terms waived Smith's right to all appeals. Smith, 134 Wash.2d at 851, 953 P.2d 810.[5]
¶ 16 The Washington Supreme Court allowed the defendant's appeal in Smith, despite the written waiver, because the defendant did not intelligently waive his right to appeal. Smith, 134 Wash.2d at 853, 953 P.2d 810. The Supreme Court noted that although defense counsel's statements conflicted with the plea agreement, those statements went uncorrected by both the judge and the prosecutor. Smith, 134 Wash.2d at 853, 953 P.2d 810. Thus, the Supreme Court held that the defendant did not knowingly waive his right to appeal. Smith, 134 Wash.2d at 853, 953 P.2d 810.
¶ 17 Similarly, here the State's written notation conflicted with the plea agreement and went uncorrected by the trial court, the State, or defense counsel. We do not decide this issue on "voluntariness." But we do hold that the prosecutor's notation on the defendant's statement on plea of guilty waived any objection to Snapp's appeal of the CrR 3.6 decision by the State.

II. Lawful Stop and Search Incident to Arrest

A. Suppression under Gant

¶ 18 Snapp contended below that, among other reasons, the search incident to arrest was unlawful. He argues that the trial court erred when it denied his motion to suppress after the CrR 3.6 hearing. At oral argument before this court, Snapp argued that the United States Supreme Court's recent Gant opinion applied and required suppression of the evidence seized. For the purposes of our opinion, Snapp challenged the scope of the search incident to arrest and the trial court found that the search did not exceed the permitted scope.

1. Retroactivity
¶ 19 The United States Supreme Court issued Gant on April 21, 2009, while Snapp's appeal was pending before this court. It is well settled that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the *976 new rule constitutes a `clear break' with the past." Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); State v. McCormack, 117 Wash.2d 141, 145, 812 P.2d 483 (1991), cert. denied, 502 U.S. 1111, 112 S.Ct. 1215, 117 L.Ed.2d 453 (1992). This retroactivity rule is consistent with "basic norms of constitutional adjudication" and the "integrity of judicial review," which requires that courts treat similarly situated defendants the same. Griffith, 479 U.S. at 322, 107 S.Ct. 708. Thus, to the extent that Gant is a "clear break" from the past, it applies with the same force as if it were on the books at the time of Snapp's arrest. We hold that Gant applies retroactively to all cases not yet final on April 21, 2009, including Snapp's case. See Griffith, 479 U.S. at 328, 107 S.Ct. 708; McCormack, 117 Wash.2d at 145, 812 P.2d 483. See also State v. Millan, 151 Wash.App. 492, 496, 212 P.3d 603 (2009) (holding that Gant applies retroactively to all cases pending on direct review or not yet final).

2. Error Not Waived
¶ 20 Washington appellate courts generally do not consider issues raised for the first time on appeal. RAP 2.5(a); State v. McFarland, 127 Wash.2d 322, 332-33, 899 P.2d 1251 (1995); State v. Guloy, 104 Wash.2d 412, 421, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986) (to the extent that a motion to suppress is a challenge to the admissibility of evidence, generally evidence may be challenged only on the grounds presented to the trial court). In a recent decision, this court held that a defendant may not challenge under Gant the admission of evidence seized during a search incident to arrest for the first time on appeal. Millan, 151 Wash.App. at 499-500, 212 P.3d 603. In that case, the defendant did not file a suppression motion, and argued for the first time on appeal that Gant applied. Millan, 151 Wash. App. at 499, 212 P.3d 603. In contrast, Snapp challenged the scope of the vehicle search incident to arrest below. While he did not, and could not, have raised his challenge under Gant, which was not yet decided, he sufficiently challenged the scope of the search incident to his arrest. Thus, Snapp preserved this issue for appeal.

3. Admission of Evidence under Gant

¶ 21 Although Gant applies to this case, it does not warrant suppression of the evidence. In Gant, police officers arrested Gant for driving on a suspended license, handcuffed him, and placed him in the back of a patrol car. Gant, 129 S.Ct. at 1715. Officers then searched his vehicle and found cocaine in a jacket in the back seat. Gant, 129 S.Ct. at 1715. On appeal, the United States Supreme Court reversed, holding that police officers may search a vehicle incident to arrest only if the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or if it is reasonable to believe that the vehicle might contain evidence of the offense of arrest. Gant, 129 S.Ct. at 1719.
¶ 22 Here, although Trooper Pigott searched Snapp's vehicle after placing Snapp in his patrol car, unlike in Gant, Trooper Pigott searched Snapp's vehicle for evidence related to the crime for which he arrested Snapp. Trooper Pigott arrested Snapp for escape; driving while license suspended; and, most relevant to this analysis, drug paraphernalia.
¶ 23 The use of drug paraphernalia is prohibited under RCW 69.50.412. That statute states in relevant part:
It is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance. Any person who violates this subsection is guilty of a misdemeanor.
RCW 69.50.412(1). RCW 69.50.102 provides a detailed definition of the various types of drug paraphernalia. Subsection (b) of that statute lists a series of factors that may be considered in determining whether an object is drug paraphernalia:
(b) In determining whether an object is drug paraphernalia under this section, a court or other authority should consider, in *977 addition to all other logically relevant factors, the following:
(1) Statements by an owner or by anyone in control of the object concerning its use;
. . . .
(4) The proximity of the object to controlled substances;
¶ 24 As Trooper Pigott had pulled Snapp over, he observed Snapp lean forward as if hiding something under his seat. Trooper Pigott suspected that Snapp was under the influence of drugs because of Snapp's fidgety, restless, quick, and jerky movements. When Snapp reached into his glove compartment, Trooper Pigott noticed a baggie containing a white substance that he suspected was drugs. Snapp admitted that a methamphetamine pipe was in the car, and Trooper Pigott found one under the driver's seat where Snapp had appeared to hide something. Based on Snapp's movements as if he were hiding something under the driver's seat, Snapp's odd behavior, the location of the methamphetamine pipe, and the plastic baggie containing the white substance, Trooper Pigott could have reasonably suspected that Snapp had used drug paraphernalia. See State v. Neeley, 113 Wash.App. 100, 108, 52 P.3d 539 (2002) (the timing and location of the appellant's car, her physical behavior, and the drug paraphernalia lying on the passenger seat, raised a reasonable inference that she used the paraphernalia to ingest a controlled substance); State v. Lowrimore, 67 Wash. App. 949, 959, 841 P.2d 779 (1992) (holding that possession of paraphernalia, coupled with bizarre and emotionally unstable behavior gives rise to probable cause to arrest for violation of RCW 69.50.412(1)).
¶ 25 Trooper Pigott stated at the CrR 3.6 hearing that he searched the car for drugs. As proximity of the object to a controlled substance would help determine whether the pipe was drug paraphernalia, Trooper Pigott could search Snapp's vehicle for drugs. RCW 69.50.102(b)(4). Trooper Pigott therefore searched for evidence related to the crime for which he had arrested Snapp. We hold that although Gant applies, Trooper Pigott's search falls under the exception laid out in Gant because Trooper Pigott searched Snapp's vehicle for evidence related to the crime for which he arrested Gant. Gant does not warrant suppression of evidence.
¶ 26 The State urges us to hold that the trooper acted in good faith and that the "good faith" exception to the exclusionary rule should be applied. Suppl. Br. of Resp't at 12. Because applying Gant does not result in the suppression of any evidence, we do not address whether the good faith exception to the exclusionary rule applies, noting only that this state has not adopted the good faith exception. State v. Kirwin, 165 Wash.2d 818, 833, 203 P.3d 1044 (2009) (State of Washington has not adopted the good faith rule for arrests made under an unconstitutional statute); State v. Crawley, 61 Wash. App. 29, 35, 808 P.2d 773, review denied, 117 Wash.2d 1009, 816 P.2d 1223 (1991) (Washington Supreme Court has not adopted the good faith rule allowing admission of evidence obtained by police acting in good faith upon a defective search warrant).
¶ 27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: QUINN-BRINTNALL, J.
HUNT, J. (concurring).
¶ 38 I concur in the majority's result and in most of the majority's analysis. And, because at trial Daniel Snapp challenged the scope of the vehicle search incident to his arrest, I agree with the majority's narrow holding that Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) applies retroactively to Snapp's case. I write separately, however, to articulate my disagreement with the majority's broad holding that "Gant applies retroactively to all cases not yet final on April 21, 2009." Majority at 976. In my view, inclusion of such a broad holding here is unnecessary dicta. See my similar concurrence in State v. Millan, 151 Wash.App. 492, 503-04, 212 P.3d 603 (2009).
NOTES
[1] State v. Newton, 87 Wash.2d 363, 552 P.2d 682 (1976); see also North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The record does not establish exactly where in the car the trooper discovered the accordion file or the black CD wallet.
[4] Snapp originally filed his notice of appeal on January 3, 2008, over 30 days from the trial court's final decision. After this court apprised him of his untimely appeal, Snapp successfully moved this court to allow his late filing.
[5] We note that Snapp could have still challenged the voluntariness of the plea even under the terms of the plea agreement.