[No. 38472-8-II. Division Two. November 30, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. DARRIN L. LOUTHAN, *Appellant*.

*Susan F. Wilk* and *Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Edgar M. Korzeniowski, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — At a bench trial on stipulated facts, the trial court found Darrin L. Louthan guilty of unlawful possession of methamphetamine, contrary to RCW 69.50.4013(1). Louthan appeals his conviction, asserting that the arresting officer lacked probable cause to arrest him for possession of drug paraphernalia and, thus, the trial court erred when it denied his motion to suppress the evidence seized incident to his arrest. In this appeal, we also address the applicability of the rules announced in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), and *State v. Patton*, 167 Wn.2d 379, 219 P.3d 651 (2009), to the search of Louthan's vehicle incident to his arrest. Because police had probable cause to arrest Louthan for driving while under the influence of a controlled substance, contrary to former RCW 46.61.502 (2006), and because Louthan failed to preserve an objection to the scope of the officer's search of his vehicle incident to his arrest by not objecting on these specific grounds below, we affirm.

## FACTS

¶2 Due to high flooding and water over roadways in December 2007, the Washington State Department of Transportation closed a portion of Highway 107 in Grays Harbor County, setting up barricades, cones, and road blocks. While monitoring the closure, Montesano Police Officer Dwayne Hayden stopped a vehicle that had entered the closed segment of the highway. When Hayden contacted the driver of the vehicle, later identified as Louthan, Hayden suspected that he was under the influence of a controlled substance. Hayden did not detect the odor of alcohol on Louthan's breath, but he noticed that Louthan's pupils did not expand or contract when he shined a light on them. And when Hayden asked for Louthan's proof of insurance, he gave the officer a copy of his 2006 tax return, insisting that it was his proof of insurance.

¶3 While standing outside the car, Officer Hayden saw what he believed to be drug paraphernalia behind

Louthan's seat. The item was made out of an orange juice container with a tube secured by electrical tape protruding through the side of it. Based on his training and experience, Hayden recognized this as drug paraphernalia used to ingest drugs. Hayden instructed Louthan to exit the vehicle, arrested him, and read him *Miranda*[1] warnings.

¶4 Officer Hayden then searched Louthan's vehicle. Hayden saw a black tar residue on the orange juice container that he recovered from behind Louthan's seat. The search also resulted in the seizure of the following items: three bindles containing a white powdery substance, a blade with black tar residue on it, two glass pipes, and a digital scale. Hayden conducted field tests on the substances; the white powdery substance contained methamphetamine and the black tar substance contained an opiate. Kimberly Hefton, a forensic scientist with the Washington State Patrol Crime Lab, later confirmed Hayden's field test results and identified the opiate in the black tar residue as heroin.

¶5 The State charged Louthan with unlawful possession of methamphetamine. Louthan moved to suppress the evidence obtained during the search incident to his arrest, contending that his arrest was unlawful. Specifically, Louthan asserted that the municipal code on which Officer Hayden based his arrest, Montesano Municipal Code 8.22.040 (unlawful possession of drug paraphernalia), conflicted with RCW 69.50.412(1), rendering the municipal code unconstitutional and his arrest invalid. The trial court denied Louthan's motion to suppress, reasoning that Hayden had probable cause to arrest him under RCW 69.50.412 (unlawful use of drug paraphernalia) and, thus, the evidence was seized during a search incident to a lawful arrest. At a bench trial on stipulated facts, the trial court found Louthan guilty of unlawful possession of methamphetamine; it sentenced him to 60 days confinement with 30 of those days converted into 240 hours of community restitution.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶6 Louthan appealed his conviction on the grounds that his arrest was unlawful and that the trial court erred when it refused to suppress the evidence seized incident to his arrest. On December 4, 2009, we ordered the parties to submit supplemental briefing addressing *Gant, Patton,* and *State v. Winterstein,* 167 Wn.2d 620, 220 P.3d 1226 (2009). In this opinion, we address the legality of Louthan's arrest and the subsequent search of his vehicle.

## ANALYSIS

VALIDITY OF LOUTHAN'S ARREST

■ ¶7 Louthan first contends that Officer Hayden unlawfully arrested him for possessing drug paraphernalia, asserting that, although the Montesano local ordinance criminalized this conduct, the Uniform Controlled Substances Act, ch. 69.50 RCW, as adopted in Washington, does not permit an arrest for mere possession of drug paraphernalia. Louthan specifically contends that his arrest was unlawful because the local ordinance criminalizing mere possession of drug paraphernalia conflicts with State law and is, thus, unconstitutional and cannot form the basis for a valid arrest. But Louthan overlooks the fact that police had probable cause to arrest him for driving while under the influence of a controlled substance, in violation of former RCW 46.61.502. Accordingly, his arrest was lawful and we need not reach his statutory constitutional claims. *See, e.g., State v. Huff,* 64 Wn. App. 641, 646-48, 826 P.2d 698 (arrest supported by probable cause not made unlawful by officer's reliance on offense different from one for which probable cause exists), *review denied,* 119 Wn.2d 1007 (1992); *see also State v. Stebbins,* 47 Wn. App. 482, 735 P.2d 1353 (where police arrested suspect for armed robbery, for which there was no probable cause, arrest held lawful because probable cause existed to arrest for crime of burglary), *review denied,* 108 Wn.2d 1026 (1987).

■ ¶8 We review a trial court's denial of a motion to suppress to determine whether substantial evidence sup-

ports the factual findings and, if so, whether the findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Louthan does not challenge the trial court's factual findings, and they are verities on appeal. *State v. Acrey*, 148 Wn.2d 738, 745, 64 P.3d 594 (2003). We, thus, limit our review to whether the trial court's findings support its legal conclusions that Officer Hayden had probable cause to arrest Louthan (for his suspected driving while under the influence of a controlled substance) and whether the evidence obtained in the search of Louthan's vehicle was admissible at trial. We review a trial court's conclusions of law pertaining to evidence suppression motions de novo. *Acrey*, 148 Wn.2d at 745.

¶9 Absent an exception to the warrant requirement, we presume that a warrantless search is unconstitutional under the Fourth Amendment to the United States Constitution and article I, section 7 of our state constitution. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). One exception to the warrant requirement allows for a warrantless search incident to a lawful arrest. *State v. Vrieling*, 144 Wn.2d 489, 492, 28 P.3d 762 (2001). In order for the search incident to lawful arrest warrant exception to apply, the arrest preceding the search must be lawful. *See State v. O'Neill*, 148 Wn.2d 564, 587, 62 P.3d 489 (2003) ("[A] lawful, actual custodial arrest is a 'constitutionally required prerequisite to any search incident to arrest.' " (quoting *State v. Parker*, 139 Wn.2d 486, 496, 987 P.2d 73 (1999))).

¶10 A lawful custodial arrest requires the officer to have probable cause to believe that a person committed *a* crime. *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004); *State v. McKenna*, 91 Wn. App. 554, 560, 958 P.2d 1017 (1998). Probable cause "boils down, in criminal situations, to a simple determination of whether the relevant official, police or judicial, could reasonably believe that the person to be arrested has committed *a* crime." *State v. Klinker*, 85 Wn.2d 509, 521, 537 P.2d 268 (1975) (emphasis added). Probable cause is not knowledge of evidence sufficient to establish guilt beyond a reasonable doubt but, rather, is

"reasonable grounds for suspicion coupled with evidence of circumstances to convince a cautious or disinterested person that the accused is guilty." *State v. Bellows*, 72 Wn.2d 264, 266, 432 P.2d 654 (1967). We determine whether an arresting officer's belief was reasonable after considering all the facts within the officer's knowledge at the time of the arrest as well as the officer's special expertise and experience. *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).

■ ¶11 An arrest not supported by probable cause is not made lawful by an officer's subjective belief that the suspect has committed a crime. *Huff*, 64 Wn. App. at 645. And conversely, "an arrest supported by probable cause is not made unlawful by an officer's subjective reliance on, or verbal announcement of, an offense different from the one for which probable cause exist[ed at the time of the arrest]." *Huff*, 64 Wn. App. at 646. " 'The law cannot expect a patrolman, unschooled in the technicalities of criminal and constitutional law . . . to always be able to immediately state with particularity the exact grounds on which he is exercising his authority.' " *Huff*, 64 Wn. App. at 646 (alteration in original) (quoting *McNeely v. United States*, 353 F.2d 913, 918 (8th Cir. 1965)).

¶12 Louthan asserts that probable cause cannot be supported by an offense different from the offense that an officer relied on when making his arrest. But it is well established in both state and federal law that the relevant inquiry in a probable cause determination is whether an officer had objectively sufficient probable cause to arrest for *an* offense; the officer's subjective intent to arrest for a particular offense is immaterial.[2] *United States v. Saunders*, 476 F.2d 5, 7 (5th

---

[2] Louthan contends that our Supreme Court's decision in *Winterstein*, 167 Wn.2d 620, implied that probable cause determinations must be based on the officer's stated reasons for arresting a suspect. In *Winterstein*, our Supreme Court held that probation officers must have probable cause to believe that a probationer lives at the residence they seek to search and that the inevitable discovery doctrine is not compatible with the privacy protections afforded by article I, section 7 of our state constitution. Louthan's reliance on *Winterstein* is misplaced because, by its definition, the inevitable discovery doctrine would apply only in

Cir. 1973); *United States v. Bowers*, 458 F.2d 1045, 1047 (5th Cir.), *cert. denied*, 409 U.S. 868 (1972); *Ricehill v. Brewer*, 459 F.2d 537, 538-39 (8th Cir. 1972); *United States v. Brookins*, 434 F.2d 41, 44-45 (5th Cir. 1970), *cert. denied*, 401 U.S. 912 (1971); *Klingler v. United States*, 409 F.2d 299, 303 (8th Cir.), *cert. denied*, 396 U.S. 859 (1969); *State v. Vangen*, 72 Wn.2d 548, 553, 433 P.2d 691 (1967); *Huff*, 64 Wn. App. at 645-46; *City of Seattle v. Cadigan*, 55 Wn. App. 30, 36, 776 P.2d 727, *review denied*, 113 Wn.2d 1025 (1989); *Stebbins*, 47 Wn. App. at 485.

¶13 Next, Louthan argues that the trial court erred by finding that Officer Hayden had probable cause to arrest him for the misdemeanor offense of unlawful use of drug paraphernalia because the State did not present any evidence that the offense was committed in the officer's presence as former RCW 10.31.100 (2006) required.[3] But even if Louthan were correct, Hayden had probable cause to arrest him for driving while under the influence of a controlled substance contrary to former RCW 46.61.502. We can affirm a trial court's probable cause determination, a question of law, on any correct ground appearing in the record. *See State v. Gibson*, 152 Wn. App. 945, 958, 219 P.3d 964 (2009) (quoting *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986)); *State v. Lakotiy*, 151 Wn. App. 699, 707, 214 P.3d 181 (2009), *review denied*, 168 Wn.2d 1026 (2010).

¶14 Here, the stipulated facts show that Officer Hayden stopped Louthan for failure to obey traffic control devices. After Hayden stopped him, Louthan exhibited behaviors indicating that he was under the influence of a controlled substance: his pupils were constricted, his speech was slurred, and when asked for proof of insurance he produced

situations where the State seeks to admit evidence that it claims the police would have discovered notwithstanding a violation of the defendant's constitutional rights, e.g., after a determination that probable cause did not exist. 167 Wn.2d at 634. The well-established law that probable cause determinations are objective inquiries remains unchanged following *Winterstein*.

[3] Subject to certain enumerated exceptions, former RCW 10.31.100 provides, "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer."

a tax return insisting that it was his proof of insurance. Additionally, while standing outside Louthan's car conducting the traffic stop, Hayden could see a device used to ingest drugs behind Louthan's seat.

¶15 Based on the evidence outlined above, Officer Hayden had probable cause to arrest Louthan for driving while under the influence of a controlled substance and seizing evidence of that crime he found in open view.

SEARCH INCIDENT TO LOUTHAN'S ARREST

¶16 Having established that Officer Hayden had probable cause to arrest Louthan for driving while under the influence of a controlled substance, we now turn to whether the trial court erred by refusing to suppress the evidence seized from Louthan's vehicle. Initially, we note that Louthan did not challenge the scope of Hayden's search below. Accordingly, he has failed to preserve an objection to the search on these grounds in his appeal. ER 103(a); RAP 2.5(a).

¶17 Louthan's appeal was pending when the United States Supreme Court decided *Gant* on April 21, 2009, and the rule announced in *Gant* applies to issues preserved for review.[4] *See Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987) ("a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final"); *State v. McCormack*, 117 Wn.2d 141, 144-45, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111 (1992). As we held in *State v. Millan*, 151 Wn. App. 492, 212 P.3d 603 (2009), *review granted*, 168 Wn.2d 1005 (2010), and *State v. Cardwell*, 155 Wn. App. 41, 226 P.3d 243 (2010), the retrospective application of a new criminal rule does not relieve a defendant of the responsibility of preserving an issue for appeal by filing a motion to suppress in the trial court. To adequately preserve an objection to the admissibility of

---

[4] We note that the State does not contend that the rule announced in *Gant* does not apply to Louthan's appeal.

physical evidence for review, the defendant's motion to suppress must raise the specific grounds on which he is objecting to the search. CrR 3.6(a); ER 103(a); RAP 2.5(a).[5]

¶18 Absent a statement of the specific grounds on which a defendant challenges the admissibility of evidence seized in an alleged illegal search, the State will not have an opportunity to present alternative theories to justify the contested search and the trial court will not make a ruling sufficient for this court to review. CrR 3.6(a); ER 103; *see State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986); *see also State v. Harris*, 154 Wn. App. 87, 101-02, 224 P.3d 830 (2010) (Quinn-Brintnall, J., dissenting). Where the trial court has not ruled on an issue, there is no error appearing on the record affecting a constitutional right allowing us to address an untimely challenge to the admissibility of the evidence. RAP 2.5(a)(3). As our Supreme Court stated in *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995), "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest."

¶19 Here, Louthan challenged the search of his vehicle, asserting only that his arrest was unlawful. He did not challenge the scope of the search incident to his arrest. Because he did not challenge the scope of the search of his vehicle, the State did not present alternative theories that may have justified the search and the trial court did not create a record sufficient for this court's review. Accordingly, we hold that Louthan has failed to preserve an objection to the scope of Officer Hayden's search of his vehicle incident to his lawful arrest for appellate review.

---

[5] ER 103(a) provides,

**Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike is made, *stating the specific ground of objection,* if the specific ground was not apparent from the context.

(Second emphasis added.)

¶20 In addition, we note that here the officer did not seize the orange juice container bong pursuant to an illegal search. Evidence discovered in "open view" is not the product of a "search" within the meaning of the Fourth Amendment. *State v. Perez*, 41 Wn. App. 481, 483, 704 P.2d 625 (1985) (citing *State v. Seagull*, 95 Wn.2d 898, 901-02, 632 P.2d 44 (1981)). Under the "open view" doctrine, there is no search because a government agent's " 'observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public.' " *Seagull*, 95 Wn.2d at 902 (quoting *State v. Kaaheena*, 59 Haw. 23, 28-29, 575 P.2d 462 (1978)). Accordingly, the object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution. *State v. Kennedy*, 107 Wn.2d 1, 10, 726 P.2d 445 (1986). It is well established that a person has a diminished expectation of privacy in the visible contents of an automobile parked due to a lawful police stop. *Kennedy*, 107 Wn.2d. at 10.

¶21 While standing outside Louthan's vehicle after having lawfully stopped Louthan for driving on a closed road, Officer Hayden saw an orange juice container bong sitting on the back seat of Louthan's car. In accordance with the open view doctrine, Hayden lawfully seized the drug-ingesting device he saw in open view and the trial court did not err by declining to exclude the evidence at trial.

¶22 The dissent argues that in addition to the bong's being in open view, exigent circumstances were required for Officer Hayden to seize the evidence. First, we reiterate that because the bong was in *open view* there was no illegal search and Louthan's privacy rights were not violated by Hayden's seizing of the bong. *Perez*, 41 Wn. App. at 483. Second, because the bong seized is contraband, Louthan had no property right to possess it. RCW 69.50.505(1) ("The following are subject to seizure and forfeiture and no property right exists in them: . . . (f) All drug paraphernalia.").

■■■ ¶23 More importantly, assuming without deciding that exigent circumstances are required to seize evidence found in open view, here exigent circumstances existed. Exigent circumstances exist when " 'obtaining a warrant is not practical because the delay inherent in securing a warrant would . . . permit the destruction of evidence.' " *State v. Tibbles*, 169 Wn.2d 364, 370, 236 P.3d 885 (2010) (internal quotation marks omitted) (quoting *State v. Smith*, 165 Wn.2d 511, 517, 199 P.3d 386 (2009)). Louthan's car was located near a road-blocked part of a highway. Officer Hayden was monitoring the closed road and surrounding area because of ongoing public safety concerns related to the flooding and high water. In the face of natural disasters, such as possible flash floods, lahars, or tsunamis, exigent circumstances exist such that an officer does not need to spend precious time and utilize scarce emergency resources to get judicial approval to seize contraband, whether it is a bag of marijuana, a bong, or a dead body, in open view that might otherwise be lost or destroyed.[6]

¶24 Above, we applied the requirement that a party must object at trial to the admission of evidence to preserve an issue for appeal. We take this opportunity to clarify the basis for this requirement here.

■■■■ ¶25 Washington's evidence rules are intended to secure fairness in administration, eliminate unjustifiable expense and delay, and promote growth and development of evidence law "to the end that the truth may be ascertained

---

[6] We agree with Chief Justice Madsen's assessment in her dissent in *Tibbles* that applying the *State v. Terrovona*, 105 Wn.2d 632, 716 P.2d 295 (1986), exigent circumstances factors involving the warrantless search of a home to cases involving evidence seized from an automobile is an unworkable departure from prior case law. *Tibbles*, 169 Wn.2d at 374-75 (Madsen, C.J., dissenting). Moreover, the *Tibbles* court did not address the State's duty to preserve evidence. *See State v. Wittenbarger*, 124 Wn.2d 467, 477, 880 P.2d 517 (1994) (State violates a defendant's due process rights by failing to preserve "potentially useful" evidence while acting in bad faith or by failing to preserve "materially exculpatory evidence" regardless of whether acting in bad faith (citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988))). Accordingly, we do not consider or apply the *Terrovona* factors in this case, which involves the nonsearch and seizure of contraband in open view.

and proceedings justly determined." ER 102. Error may not be predicated on a ruling that admits or excludes evidence unless a substantial right of the party is affected and a timely objection or motion to strike is made, stating the specific ground of objection. ER 103(a)(1). "Relevant evidence" is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. A party is entitled to admit relevant evidence, except as limited by constitutional requirements or as otherwise provided by statute, by the evidence rules. *See* ER 402. It is error to exclude relevant evidence absent a legitimate basis for doing so. *See, e.g.*, *State v. Posey*, 161 Wn.2d 638, 648, 167 P.3d 560 (2007) (appellate court reviews a trial court's decision to exclude evidence for an abuse of discretion).

¶26 A trial court has the power to suppress relevant probative evidence by applying the exclusionary rule. The exclusionary rule is a judicially created rule. *State v. Chenoweth*, 160 Wn.2d 454, 472 n.14, 158 P.3d 595 (2007) (stating that the "federal exclusionary rule is a judicially-created prophylactic measure" and that "the state exclusionary rule is constitutionally mandated"). Two principles underpin the trial court's exclusionary rule authority; the first is to deter police misconduct. *See, e.g.*, *Murray v. United States*, 487 U.S. 533, 536-37, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988); *Chenoweth*, 160 Wn.2d at 472 n.14. The second is to avoid the trial court's complicity in that misconduct. *State v. Bonds*, 98 Wn.2d 1, 12, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983). When the evidence is seized during a search that was lawful at the time it was conducted and the evidence lawfully seized at the time of its admission at trial, neither exclusionary rule principle is implicated and application of the exclusionary rule serves

neither of the identified legitimate reasons for which it was created.[7]

¶27 Unlike the subjective "good faith" exception to the exclusionary rule, which Washington does not recognize, whether a legitimate reason actually existed at the time of the search is an objective test. Under this legitimate reason threshold test, an appellate court looks to the law in effect at the time the search was conducted and at the time the evidence was admitted at trial. If both actions were lawful at the time they occurred, courts have no exclusionary rule authority to suppress relevant evidence and deprive a party of the right to present its case in court. As an example, because the search of Valdez's car was unlawful at the time it was conducted, our Supreme Court properly asserted exclusionary rule authority to suppress the evidence. *See State v. Valdez*, 167 Wn.2d 761, 779-80, 224 P.3d 751 (2009) (Alexander, C.J., concurring); *State v. Valdez*, 137 Wn. App. 280, 288-89, 152 P.3d 1048 (2007), *aff'd*, 167 Wn.2d 761. A cause of action will lie for damages for a violation of a personal privacy right, but where the evidence was lawfully seized and lawfully admitted under controlling law at the time these events occurred, there is no denigration of the integrity of the trial process calling into question the integrity of the verdict. Appellate courts lack original exclusionary rule authority but may review a trial court's exercise of that authority when the issue is properly preserved. Consequently, under the judicially created *remedial* exclusionary rule, appellate courts lack the power to suppress evidence lawfully acquired at the time of the search and lawfully admitted under the law during trial.

---

[7] Our Supreme Court has stated that under our state constitution, the exclusionary rule's "paramount concern is protecting an individual's right of privacy." *State v. Afana*, 169 Wn.2d 169, 180, 233 P.3d 879 (2010). The Supreme Court recently began applying the exclusionary rule directly to violations of article I, section 7 of our state constitution and has done so without fully justifying its applicability under the principles underlying the long-standing judicially created remedy. In this case we review and apply only exclusionary rule principles that have been fully developed in the law.

EVIDENCE RELATED TO THE CRIME OF ARREST

 ¶28 Even if Louthan had preserved his challenge by objecting to the scope of Officer Hayden's search below, the search was proper under *Gant* and our decision in *State v. Snapp*, 153 Wn. App. 485, 219 P.3d 971 (2009), because Hayden searched the car for evidence related to the crime for which Louthan was arrested. Following *Gant*, in *Snapp*, we held that evidence seized during a search of the suspect's vehicle while the suspect was handcuffed and placed in the back of a patrol car was admissible at trial. 153 Wn. App. at 495-97. We held that the seized evidence was admissible because, under *Gant*, officers may conduct a warrantless search incident to arrest if there is probable cause to believe that the vehicle contains evidence of the offense of arrest. *Snapp*, 153 Wn. App. at 495-97 (citing *Gant*, 129 S. Ct. at 1719). Here, while standing in a place they had a lawful right to be, police saw that Louthan's vehicle contained evidence related to his driving while under the influence of a controlled substance. Accordingly, notwithstanding Louthan's failure to preserve the issue, and assuming *Gant* applies, the search of Louthan's vehicle for evidence of the crime incident to Louthan's lawful arrest did not violate *Gant*.

¶29 Citing *Patton* and *Valdez*, Louthan asserts that under article I, section 7 of our state constitution, police may not search a vehicle incident to arrest for evidence related to the offense of arrest unless the evidence was within reaching distance of the suspect at the time of the search. But the *Patton* court did not address a situation where the suspect was the driver or recent occupant of the vehicle. *See, e.g.*, *Snapp*, 153 Wn. App. at 495-97 (holding that search of driver's vehicle, after police detained him in the back of a patrol vehicle, was lawful under *Gant* because police searched for evidence of the crime of arrest). Instead, the *Patton* court addressed

> whether it would stretch the search incident to arrest exception beyond its justifications to apply it where the arrestee is not a

driver or recent occupant of the vehicle, the basis for arrest is not related to the use of the vehicle, and the arrestee is physically detained and secured away from the vehicle before the search.

167 Wn.2d at 394.

¶30 Our Supreme Court held that the search of Patton's vehicle was unlawful under article I, section 7 of our state constitution, reasoning,

Patton was not a driver or recent occupant of the vehicle searched. There is no indication in the record that Patton even had keys to the vehicle. No connection existed between Patton, the reason for his arrest warrant, and the vehicle. Rather, Patton's warrant was for failure to appear in court for a past offense unrelated to the eventual drug charge that arose from the car search. Thus, there was no basis to believe evidence relating to Patton's arrest would have been found in the car.

*Patton*, 167 Wn.2d at 395.

¶31 In contrast to *Patton*, Louthan was the driver of the vehicle searched, there was probable cause to arrest him for a driving offense relating to drug intoxication, and an implement for ingesting drugs could be seen plainly by the arresting officer from his lawful vantage point outside Louthan's vehicle. *Patton* does not apply.

¶32 Our Supreme Court's decision in *Valdez* also does not apply to the facts present in Louthan's appeal. In *Valdez*, our Supreme Court held that officers exceeded the scope of the vehicle search incident to arrest warrant exception when they searched the defendant's vehicle after securing him in the back of a patrol vehicle. 167 Wn.2d at 778. In reaching its decision, our Supreme Court noted, "[T]he State has not shown that it was reasonable to believe that evidence relevant to the underlying crime might be found in the vehicle." *Valdez*, 167 Wn.2d at 778. In contrast to *Valdez*, here officers reasonably believed that evidence of driving while under the influence of a controlled substance was in Louthan's vehicle.

¶33 Additionally, as noted in Chief Justice Alexander's concurring opinion, the officers in *Valdez*

"searched an area of the automobile that was not within the passenger compartment and thereby violated article I, section 7 of the Washington Constitution." 167 Wn.2d at 780 (Alexander, C.J., concurring). Thus, the *Valdez* court's statement that "after an arrestee is secured and removed from the automobile, he or she poses no risk of . . . concealing or destroying evidence of the crime of arrest located in the automobile, and thus the arrestee's presence does not justify a warrantless search under the search incident to arrest exception" is dicta. 167 Wn.2d at 777; *Pedersen v. Klinkert*, 56 Wn.2d 313, 317, 352 P.2d 1025 (1960) ("dicta" is language in an opinion that was not necessary to the decision in the case).

¶34 Our Supreme Court's statement, suggesting that warrantless searches for evidence of the crime of arrest are invalid under our state constitution if the suspect is out of reaching distance of the evidence, was not necessary to resolving the issues presented in *Valdez* because (1) there was no reason for police to believe that evidence of the crime of arrest could be found in the vehicle search and (2) police searched an area of the car that was not within the passenger compartment. Although *Valdez* suggests that, in a future case, our Supreme Court would hold such a search invalid under our state constitution, the issue was not before it in *Valdez*. In *Valdez*, our Supreme Court did not have before it a case presenting the legality of a search for evidence of the crime of arrest. Accordingly, our Supreme Court's statement is merely advisory. *See Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus.*, 121 Wn. App. 601, 606, 89 P.3d 316 (2004) (absent an actual case or controversy, the reviewing court steps into the prohibited area of advisory opinions (citing *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973))), *review denied*, 153 Wn.2d 1005 (2005). Moreover, we note that, like *Valdez*, our Supreme Court's recent opinion in *State v. Afana*, 169 Wn.2d 169, 178, 233 P.3d 879 (2010), addressed a situation where the arresting officer "had no reason to believe that the vehicle in which [the defendant] was a

passenger contained evidence of the crime for which [the defendant] was being arrested."

¶35 Because probable cause supports Louthan's arrest and he failed to preserve an objection to the scope of the search of his vehicle for evidence of the crime of arrest, we affirm.

HUNT, J., concurs.

¶36 BRIDGEWATER, J. (concurring in part, dissenting in part) — I would hold that the arrest was lawful under the majority's driving under the influence rationale, that Darrin L. Louthan could raise the search incident to arrest issue before us, that the search incident to arrest was improper under *State v. Patton*[8] and *State v. Valdez*,[9] and that the seizure of the bong was improper. Thus, I concur in part but dissent from the majority's conclusion, and I would reverse Louthan's conviction.

¶37 I concurred in the result of *State v. Millan*[10] because the defendant did not move to suppress the evidence below on grounds that the search was unlawful *and* the record was insufficient for us to determine whether the search was unlawful. *Millan*, 151 Wn. App. at 503. Here, Louthan moved to suppress evidence obtained during his search, which generated a record sufficient for us to determine whether the search was unlawful. Also, I note that our Supreme Court recently reviewed an *Arizona v. Gant*[11] issue raised for the first time on appeal even though the defendant did not specifically challenge the search in the suppression hearing below. *State v. Afana*, 169 Wn.2d 169, 175, 233 P.3d 879 (2010).

---

[8] 167 Wn.2d 379, 385, 219 P.3d 651 (2009).

[9] 167 Wn.2d 761, 767, 224 P.3d 751 (2009).

[10] 151 Wn. App. 492, 503, 212 P.3d 603 (2009), *review granted*, 168 Wn.2d 1005 (2010).

[11] 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

¶38 Louthan challenged the search on appeal under both the Fourth Amendment to the United States Constitution and article I, § 7 of our state constitution.[12] "When a party claims both state and federal constitutional violations, we turn first to our state constitution." *Patton*, 167 Wn.2d at 385 (citing *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996)). I would examine the search incident to Louthan's arrest under the recent cases of *Patton*, 167 Wn.2d at 385, and *Valdez*, 167 Wn.2d at 767.

¶39 Applying Washington's search incident to arrest rule here, nothing in the record indicates that the officer searched Louthan's car to protect himself or to prevent destruction or concealment of evidence. Louthan was in custody at the time of the search and, therefore, could not threaten officer safety or conceal or destroy evidence. I would hold that the search incident to Louthan's arrest was unlawful because it was not necessary at the time of the search to preserve officer safety or prevent concealment or destruction of evidence of the crime of the arrest. *Valdez*, 167 Wn.2d at 777; *Patton*, 167 Wn.2d at 394-95; *Afana*, 169 Wn.2d at 177-78; *State v. Chesley*, 158 Wn. App. 36, 46, 239 P.3d 1160 (2010).

¶40 I further note that the "open view" doctrine that the majority alternatively relies on to uphold the search under *Gant* was neither briefed nor argued by either party; regardless, the bong in open view does not support the majority's opinion. Although I agree that Officer Hayden's seeing the bong did not constitute an unlawful search under the open view doctrine, I disagree that, absent exigencies, the open view doctrine permitted Officer Hayden to seize it without a warrant. To justify a warrantless seizure, the police must have probable cause to believe that the vehicle contains evidence of a crime and must be faced with " 'emergent or exigent circumstances regarding the security and acquisition of incriminating evidence' " that made it

---

[12] *C.f. State v. Snapp*, 153 Wn. App. 485, 495-96, 219 P.3d 971 (2009) (appellant did not challenge search under article I, § 7, but the search was lawful under the Fourth Amendment when the officer searched for evidence related to the crime of arrest).

impracticable to obtain a warrant. *State v. Gibson*, 152 Wn. App. 945, 956, 219 P.3d 964 (2009) (quoting *State v. Smith*, 88 Wn.2d 127, 137-38, 559 P.2d 970, *cert. denied*, 434 U.S. 876 (1977)); *see also State v. Young*, 28 Wn. App. 412, 416, 624 P.2d 725 (officer who sees potential evidence of a crime inside a car may seize that evidence when it could be used to identify a suspect at large), *review denied*, 95 Wn.2d 1024 (1981). Exigent circumstances are those that truly involve an emergency, i.e., an immediate major crisis, that requires swift action to prevent the destruction of evidence or protect officer safety. *State v. Hinshaw*, 149 Wn. App. 747, 753, 205 P.3d 178 (2009).

¶41 Here, Officer Hayden had no reason to conclude that the bong was any kind of emergent or exigent circumstance to support a warrantless seizure. The record contains no evidence that the road on which Louthan parked his car was flooding at the time Officer Hayden seized the bong. Instead, Officer Hayden's police report suggests that he made the stop *after* Louthan exited the area that was closed due to flooding.[13] Also, in analogous circumstances, the emergency has been intimately tied to the area invaded for the search, whether the emergency is based on a community caretaking notion, in which an officer enters the protected area to ascertain if people are within it, *State v. Menz*, 75 Wn. App. 351, 354-55, 880 P.2d 48 (1994), *review denied*, 125 Wn.2d 1021 (1995), or whether the emergency is based on protecting the public from a danger posed by nearby materials that might explode. *State v. Smith*, 165 Wn.2d 511, 518, 199 P.3d 386 (2009); *see also State v. Kinzy*, 141 Wn.2d 373, 386-87, 5 P.3d 668 (2000) (in community

---

[13] Officer Hayden's police report stated,

I was *monitoring the road closure/road block* at Hwy 107 and Main Street. At approximately 2030 I observed a *vehicle approach my location from the south.* [Louthan's] vehicle *came from . . .* an area that was closed due to the high water being over the roadway. The stretch of Hwy 107 that was closed was from Hwy 12 to Minkler Road. The road was closed due to flooding in the area and high water over the roadway. The Department of Transportation had set up barricades, cones, and road blocks on each side of the river identifying it as "road closed" and "water over roadway."

Clerk's Papers at 11 (emphasis added).

caretaking context, officer has reasonable basis to associate need for assistance with place searched), *cert. denied*, 531 U.S. 1104 (2001); *State v. Hos*, 154 Wn. App. 238, 246-47, 225 P.3d 389, *review denied*, 169 Wn.2d 1008 (2010) (citing the same). Here, there is nothing that presents a danger to the public, the officer, or destruction of evidence.

¶42 If, as the majority suggests, the flooding presented an immediate emergency, there needs to be some evidence that a crisis was imminent. Without such evidence that the flooding was an immediate crisis, there is no evidence that the alleged flooding jeopardized evidence or made it unsafe for Officer Hayden to obtain a warrant. Nor is there evidence that circumstances made it impracticable for Officer Hayden to obtain a telephonic warrant. Therefore, I disagree with the majority's conclusion that the flooding constitutes an exigency. *See, e.g., State v. Tibbles*, 169 Wn.2d 364, 236 P.3d 885 (2010) (no exigent circumstance where State failed to show that suspect was fleeing, that evidence would likely be destroyed, or that obtaining a warrant was otherwise impracticable).

¶43 Viewing the bong in open view was not a search and might have supported probable cause for a warrant to search Louthan's car, or perhaps supported impounding the car and conducting an inventory search, but these avenues were not pursued. Thus, I would reverse Louthan's conviction.