247 P.3d 802 (2011)
STATE of Washington, Respondent,
v.
Joshua A. SWETZ, Appellant.
No. 39617-3-II.
Court of Appeals of Washington, Division 2.
February 11, 2011.
*803 John A. Hays, Attorney at Law, Longview, WA, for Appellant.
Lori Ellen Smith, Attorney at Law, Centralia, WA, for Respondent.
ARMSTRONG, P.J.
¶ 1 Joshua Swetz appeals his convictions for possession of a controlled substance and possession of marijuana, arguing the arresting officer's warrantless search of his vehicle incident to his arrest violated his right to privacy under article I, section 7 of our state constitution. We reverse Swetz's convictions and remand with instructions to suppress the evidence seized from his vehicle.

*804 FACTS
¶ 2 At 1:30 A.M. on the morning of August 19, 2008, Officer Osterdahl was patrolling the City of Morton when Swetz flagged him down and told him that he had seen a black bear roaming the streets. Officer Osterdahl drove to the area that Swetz had described and saw a dog chasing a bear. Later that morning, Officer Osterdahl pulled up next to Swetz's parked vehicle and Swetz approached the officer's window. During their conversation, Officer Osterdahl noticed a "strong odor of burnt marijuana" on Swetz's breath and person. Report of Proceedings (RP) at 27. Officer Osterdahl walked with Swetz back to his vehicle and saw a bag of marijuana sitting on the passenger seat.[1]
¶ 3 Officer Osterdahl arrested Swetz for possession of marijuana, handcuffed him, placed him in the back seat of the patrol car, and advised him of his Miranda rights.[2] He then searched Swetz's car and found additional containers of marijuana in the glove box, glass pipes with marijuana residue, and several containers of Diazepam pills.[3] The State charged Swetz with one count of possession of a controlled substance, Diazepam, and one count of possession of marijuana, and a jury convicted him of both counts. RCW 69.50.4013(1), .4014.

ANALYSIS

I. STANDARD OF REVIEW
¶ 4 Swetz relies on State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009), and State v. Buelna Valdez, 167 Wash.2d 761, 224 P.3d 751 (2009), to argue that Officer Osterdahl's warrantless search of his vehicle exceeded the scope of a permissible search incident to arrest under article I, section 7 of our state constitution. He concedes that Officer Osterdahl's search was permissible under Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), and the Fourth Amendment to the federal constitution, but he argues that the search incident to arrest exception is narrower under article I, section 7.

A. Manifest Error

¶ 5 Swetz did not challenge Officer Osterdahl's vehicle search at trial because Patton and Buelna Valdez were decided after his trial and convictions.[4] Generally, we apply new constitutional rules of criminal procedure to all cases pending on direct review or not yet final. Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). And an appellant can raise an alleged error for the first time on appeal if it is manifest and affects a constitutional right. RAP 2.5(a)(3); State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995).
¶ 6 The alleged error here affected Swetz's constitutional right to privacy under article 1, section 7 of our state constitution. See Buelna Valdez, 167 Wash.2d at 771-72, 224 P.3d 751; Patton, 167 Wash.2d at 385-86, 219 P.3d 651. The error is "manifest" if it is apparent in the record and actually affected Swetz's rights. See McFarland, 127 Wash.2d at 333, 899 P.2d 1251. Nothing in the record justifies Officer Osterdahl's warrantless search of Swetz's vehicle incident to his arrest, and the evidence seized from his vehicle provided the basis for the charges against him. As discussed in detail below, such a search exceeds the scope of a permissible search incident to arrest under our state constitution. The error is therefore manifest.

B. Waiver

¶ 7 There is presently a split within Division Two of this court regarding whether a defendant can challenge a search under Gant *805 for the first time on appeal. See, e.g., State v. Harris, 154 Wash.App. 87, 98-99, 224 P.3d 830 (2010); State v. McCormick, 152 Wash. App. 536, 539-40, 216 P.3d 475 (2009); State v. Millan, 151 Wash.App. 492, 499-500, 212 P.3d 603 (2009), rev. granted, 168 Wash.2d 1005, 226 P.3d 781 (2010). This split presumably applies to arguments raised for the first time on appeal under Patton and Buelna Valdez as well. We follow the cases holding that a defendant can challenge a vehicle search for the first time on appeal and hold that Swetz did not waive the right to challenge the search of his vehicle. See Harris, 154 Wash.App. at 98-99, 224 P.3d 830; McCormick, 152 Wash.App. at 539-40, 216 P.3d 475.
¶ 8 Additionally, the Supreme Court of Washington's recent opinion in State v. Afana, 169 Wash.2d 169, 233 P.3d 879 (2010), supports considering Swetz's argument for the first time on appeal even though the record regarding his arrest and the search of his car is not as developed as it would have been had Swetz moved to suppress the evidence below. The Afana court applied Gant, Patton, and Buelna Valdez without discussing waiver or retroactivity and held that a vehicle search violated article I, section 7 of our state constitution, even though the record regarding the arrest and search was poorly developed:
The suppression hearing . . . addressed the legality of the deputy's request for Bergeron's identification, not the arrest and search incident to arrest. Thus, the trial court did not make specific findings of fact regarding Bergeron's arrest, finding only that the deputy "arrested the passenger on the warrant."
Afana, 169 Wash.2d at 174 n. 1, 233 P.3d 879. The Afana court reasoned that "[i]t is the State's burden to show that the automobile search incident to arrest exception applies" and "[n]othing in the record justifies the search that took place here as incident to arrest." Afana, 169 Wash.2d at 177-78, 233 P.3d 879. Thus, we address the merits of Swetz's arguments.

II. SEARCH INCIDENT TO ARREST
¶ 9 Both the Fourth Amendment to the federal constitution and article I, section 7 of our state constitution prohibit warrantless searches unless one of the narrow exceptions to the warrant requirement applies.[5]See Buelna Valdez, 167 Wash.2d at 768, 771-72, 224 P.3d 751; State v. Winterstein, 167 Wash.2d 620, 628, 220 P.3d 1226 (2009). Article I, section 7 provides more extensive privacy protections than the Fourth Amendment and creates "`an almost absolute bar to warrantless arrests, searches, and seizures.'" Buelna Valdez, 167 Wash.2d at 772, 224 P.3d 751 (quoting State v. Ringer, 100 Wash.2d 686, 690, 674 P.2d 1240 (1983)).
¶ 10 In Gant, the Supreme Court held that a search incident to arrest under the Fourth Amendment may be justified by three separate basesofficer safety, the preservation of evidence, and searching for evidence of the crime of arrest:
[T]he Chimel rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. Although it does not follow from Chimel, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."
Gant, 129 S.Ct. at 1719 (quoting Thornton v. U.S., 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (citing Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969))).
¶ 11 In contrast, the Supreme Court of Washington held in Patton that a search incident to arrest under article I, section 7 must be justified by concerns for officer safety or the preservation of evidence:
Today we hold that the search of a vehicle incident to the arrest of a recent occupant *806 is unlawful absent a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search.

Patton, 167 Wash.2d at 394-95, 219 P.3d 651 (emphasis added). The Patton court also expressly disapproved of prior cases that applied the search incident to arrest exception to situations where the arrestee was secured and no longer posed a risk to the arresting officers:
[W]e also recognize that we have heretofore upheld searches incident to arrest conducted after the arrestee has been secured and the attendant risk to officers in the field has passed. Today, we expressly disapprove of this expansive application of the narrow search incident to arrest exception.
Patton, 167 Wash.2d at 395, 219 P.3d 651. The Patton court did not carve out an additional exception allowing officers to search for evidence of the crime of arrest once the arrestee is secured.
¶ 12 In Buelna Valdez, our Supreme Court recently elaborated upon the search incident to arrest exception and reasoned that the exception applies only when officers are unable to delay their search to obtain a warrant because the arrestee poses a threat to officer safety or the preservation of evidence:
[W]hen an arrest is made, the normal course of securing a warrant to conduct a search is not possible if that search must be immediately conducted for the safety of the officer or to prevent concealment or destruction of evidence of the crime of arrest. However, when a search can be delayed to obtain a warrant without running afoul of those concerns (and does not fall under another applicable exception), the warrant must be obtained. A warrantless search of an automobile is permissible under the search incident to arrest exception when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest.
Buelna Valdez, 167 Wash.2d at 777, 224 P.3d 751 (emphasis added). The Buelna Valdez court then held that the search incident to arrest exception does not apply once the arrestee is handcuffed and secured in the back of a patrol car:
Here, at the time of the search the arrestee was handcuffed and secured in the backseat of a patrol car. The arrestee no longer had access to any portion of his vehicle. The officers' search of his vehicle was therefore unconstitutional under both the Fourth Amendment and article I, section 7.
Buelna Valdez, 167 Wash.2d at 778, 224 P.3d 751. When summarizing its holding, the Buelna Valdez court again emphasized that a search incident to arrest is valid only when certain circumstances preclude officers from first obtaining a warrant:
The search [here] was conducted without a warrant even though the circumstances did not preclude officers from obtaining one prior to the search. There was no showing that a delay to obtain a warrant would have endangered officers or resulted in evidence related to the crime of arrest being concealed or destroyed. As such, the warrantless search violated article I, section 7 of the Washington Constitution. . . .
Buelna Valdez, 167 Wash.2d at 779, 224 P.3d 751 (emphasis added).
¶ 13 Significantly, the Buelna Valdez court expressly recognized that Gant allows officers to search for evidence of the crime of arrest during a search incident to arrest under the Fourth Amendment:
Independent of the rationale in Chimel, the Supreme Court reasoned that "circumstances unique to the vehicle context" justified another basis for a warrantless search . . . when it is "`reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"
Buelna Valdez, 167 Wash.2d at 771, 224 P.3d 751 (citing Gant, 129 S.Ct. at 1719 (quoting Thornton, 541 U.S. at 632, 124 S.Ct. 2127)). But the Buelna Valdez court chose not to extend its own holding to include this justification. See Buelna Valdez, 167 Wash.2d at 777, 779, 224 P.3d 751.
*807 ¶ 14 Thus, under Patton and Buelna Valdez, article I, section 7 limits a search incident to arrest to situations where threats to officer safety or the preservation of evidence prevent the arresting officer from delaying the search to obtain a warrant.[6]See Buelna Valdez, 167 Wash.2d at 777, 224 P.3d 751; Patton, 167 Wash.2d at 394-95, 219 P.3d 651. Here, Officer Osterdahl testified that he handcuffed Swetz and placed him in the patrol car before searching the vehicle. Officer Osterdahl also testified that Swetz was the sole occupant of the vehicle and no one else was in the vicinity at the time of the arrest and search. Furthermore, the State acknowledges that it "appears that the Washington Supreme Court's recent [Buelna] Valdez opinion forecloses such an `evidence-of-the-crime-of-arrest' vehicle search where, as here, the sole occupant of the vehicle has been handcuffed and placed in the patrol car." Br. of Resp't at 5. The State also concedes that if searching for evidence of the crime of arrest does not, alone, justify a search incident to arrest under article I, section 7, "then the search of [Swetz's] vehicle was indeed unlawful, and this case must be reversed and dismissed." Br. of Resp't at 6. We agree.

III. OPEN VIEW OBSERVATION AND WARRANTLESS SEIZURE

A. State Has Burden of Proving Exceptions to Warrant Requirement

¶ 15 Despite the State's concessions, the dissent argues that we mischaracterize the facts and should hold that Officer Osterdahl's warrantless seizure of the marijuana sitting in open view on the passenger seat was justified under the exigent circumstances exception. But the dissent relies on an exception that the State did not advocate as well as facts that were not admitted into evidence below.
¶ 16 The only exception that the State argues applies in this case is the search incident to arrest exception. The State is familiar with the facts and chose not to argue that exigent circumstances justified seizing the items in open view. There are "a few jealously guarded exceptions" to the warrant requirement and "[i]t is always the State's burden to establish that such an exception applies." Afana, 169 Wash.2d at 177, 233 P.3d 879; see also State v. Tibbles, 169 Wash.2d 364, 372, 236 P.3d 885 (2010). It is not the reviewing court's burden to show that a particular exception applies, particularly one the State has not raised.
¶ 17 Furthermore, the dissent relies on a police report that it acknowledges was not admitted into evidence to argue that Officer Osterdahl seized the evidence in open view before arresting Swetz, therefore the seizure was not part of the subsequent search incident to arrest. In the report, Officer Osterdahl states that after observing the marijuana on the passenger seat and glass pipes on the floor: "I took custody of these items and placed Swetz under arrest." Clerk's Papers (CP) at Exh. 2. This statement does not conclusively establish the sequence of events. Officer Osterdahl does not say he seized the items and then arrested Swetz; he could simply be stating that both events occurred around the same time. In contrast, Officer Osterdahl's testimony at the CrR 3.5 hearing was very specific:
[Officer]: I observed in plain view some glass pipes with burnt residue . . . and a clear plastic baggie with some green vegetable matter in it.
[Counsel]: What did you do next?
[Officer]: I placed Mr. Swetz under arrest.
RP at 16. Later, he again testified:
[Officer]: I looked in the vehicle, the driver's door was open, and right on the passenger front seat was a clear plastic baggie of green vegetable matter. . . .
[Counsel]: So what did you do?
[Officer]: I placed Mr. Swetz under arrest for possession of marijuana.
*808 RP at 28. Finally, and perhaps most importantly, the State concedes that "Swetz was apparently already in handcuffs at the time the officer searched the vehicle" and does not argue that Officer Osterdahl seized any evidence prior to arresting Swetz Br. of Resp't at 6. It is entirely inappropriate for us to rewrite facts that both parties have agreed on.

B. Open View Observation

¶ 18 Had the State argued that exigent circumstances justified seizing the items in open view, we would agree with the dissent's description of the open view doctrine but disagree with its conclusion that exigent circumstances justified a warrantless seizure here.
¶ 19 When a law enforcement officer observes something in open view from a lawful vantage point, the observation is not a "search" triggering the protections of article I, section 7. State v. Kennedy, 107 Wash.2d 1, 10, 726 P.2d 445 (1986); State v. Seagull, 95 Wash.2d 898, 901, 632 P.2d 44 (1981). But the officer's right to seize the items observed must be justified by a warrant or valid exception, if the items are in a constitutionally protected area. Kennedy, 107 Wash.2d at 9-10, 726 P.2d 445. As the Kennedy court explained:
[I]f an officer, after making a lawful stop, looks into a car from the outside and sees a weapon or contraband in the car, he has not searched the car. Because there has been no search, article 1, section 7 is not implicated. Once there is an intrusion into the constitutionally protected area, article 1, section 7 is implicated and the intrusion must be justified if it is made without a warrant.
Kennedy, 107 Wash.2d at 10, 726 P.2d 445; see also State v. Myrick, 102 Wash.2d 506, 514-15, 688 P.2d 151 (1984) ("`[P]lain view alone is never enough to justify the warrantless seizure of evidence . . . . even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.'" (quoting Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971))); State v. Lemus, 103 Wash.App. 94, 102, 11 P.3d 326 (2000) ("The `open view' observation is thus not a search at all but may provide evidence supporting probable cause to constitutionally search; in other words, a search pursuant to a warrant.").[7]

C. Exigent Circumstances

¶ 20 The dissent maintains that the exigent circumstances exception to the warrant requirement justified seizing the items in open view here. See State v. Young, 28 Wash.App. 412, 417-18, 624 P.2d 725 (1981) (holding that to justify the warrantless seizure of tools in open view inside a vehicle, the police must have had probable cause to believe the tools were instrumentalities of a crime and be faced with exigent circumstances which make it impracticable to obtain a warrant). Exigent circumstances include: "`(1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or to the public; (4) mobility of the vehicle; (5) mobility or destruction of the evidence.'" Tibbles, 169 Wash.2d at 370, 236 P.3d 885 (quoting State v. Counts, 99 Wash.2d 54, 60, 659 P.2d 1087 (1983)). That one of these circumstances is present does not necessarily justify a warrantless search or seizure; a court must take the particular facts of each case into consideration. Tibbles, 169 Wash.2d at 370, 236 P.3d 885.
*809 ¶ 21 In Tibbles, an officer stopped a car around midnight, smelled marijuana, searched the car without arresting the driver, and found marijuana. Tibbles, 169 Wash.2d at 367-68, 236 P.3d 885. Our Supreme Court held the State failed to show exigent circumstances justified the warrantless search where the driver was alone and complied with the trooper's requests, showed no sign of attempting to flee, and the destruction of evidence was not imminent because he was standing outside the vehicle. Tibbles, 169 Wash.2d at 371-72, 236 P.3d 885. The court concluded:
To find exigent circumstances based on these bare facts would set the stage for the exigent circumstances exception to swallow the general warrant requirement. It would give the erroneous impression that an exigency may be based on little more than a late-night stop for defective equipment, an officer working alone, and circumstances indicating possible drug possession.
Tibbles, 169 Wash.2d at 372, 236 P.3d 885. The court also observed that "[a]t best, the State has shown it was expedient for Trooper Larsen to conduct the search as he did" but "`mere convenience is simply not enough.'" Tibbles, 169 Wash.2d at 372, 236 P.3d 885 (quoting State v. Patterson, 112 Wash.2d 731, 734, 774 P.2d 10 (1989)).
¶ 22 Similarly, Swetz was outside the vehicle, his interactions with Officer Osterdahl earlier in the evening had been friendly and helpful, and nothing in the record suggests that he attempted to flee or posed any sort of threat to the officer or the evidence in the car. The exigencies that the dissent relies on are either hypothetical or were rejected by TibblesOfficer Osterdahl was working alone, Swetz was unsecured and might present a risk of flight or destruction of evidence, Swetz's companion might return. See Tibbles, 169 Wash.2d at 372, 236 P.3d 885. And if, as the dissent contends, Officer Osterdahl collected the items in open view before arresting and securing Swetz, then the officer's actions demonstrate that he did not believe Swetz posed a threat or was likely to flee. As the Tibbles court stated: "To find exigent circumstances based on these bare facts would set the stage for the exigent circumstances exception to swallow the general warrant requirement." Tibbles, 169 Wash.2d at 372, 236 P.3d 885.
¶ 23 In sum, we hold that under Patton and Buelna Valdez, article I, section 7 limits a search incident to arrest to situations where threats to officer safety or the preservation of evidence prevent the arresting officer from delaying the search to obtain a warrant. See Buelna Valdez, 167 Wash.2d at 777, 224 P.3d 751; Patton, 167 Wash.2d at 394-95, 219 P.3d 651. Because the State concedes that the search here was conducted incident to Swetz's arrest and neither of those concerns existed at the time of the search, we reverse Swetz's convictions and remand with instructions to suppress the evidence. Although it is unnecessary to consider whether exigent circumstances justified seizure of the items in open view, because the State has not argued that exception applies, we also note that the record does not show exigent circumstances were present in this case.
¶ 24 Reversed and remanded.
I concur: VAN DEREN, J.
HUNT, J. (dissenting).
¶ 25 Because Joshua Swetz failed to object to the evidence and to move to suppress below, he has failed to preserve the evidentiary challenge that he now attempts to raise for the first time on appeal. Therefore, I respectfully dissent from the majority's consideration of this non-preserved issue and its reversal of both convictions. I would affirm.
¶ 26 In the alternative, I dissent for the following additional reasons: (1) Officer Osterdahl's initial seizure of the marijuana baggie and glass pipes, in open view inside Swetz's vehicle, was not the result of a search; and (2) Osterdahl's later seizure of the remaining drug evidence was the result of a later, lawful, warrantless vehicle search incident to Swetz's arrest for possession of the contraband in open view.[8] Under this *810 alternative rationale, I would remand for a full evidentiary hearing to develop a record on the suppression issue that Swetz argues for the first time on appeal.

I. FAILURE TO PRESERVE ERROR
¶ 27 At the outset, I disagree with the majority's holding that Swetz can attempt to suppress evidence for the first time on appeal where he failed to preserve the issue below.

A. No Objection to Record Below
¶ 28 I would affirm Swetz's convictions based on State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009), review granted, 168 Wash.2d 1005, 226 P.3d 781 (2010). Under RAP 2.5(a),[9] we may refuse to review any claim of error that the appellant did not raise in the trial court.
¶ 29 At trial, Swetz neither filed a motion to suppress nor objected to the admissibility of the evidence of the two charged crimes. Nor did he challenge the lawfulness of Osterdahl's search of his (Swetz's) car or the seizure of evidence from his car. Accordingly, I would hold that Swetz failed to preserve this issue for review, and I would decline to address his evidentiary objection for the first time on appeal. ER 103(a).[10]

B. Constitutional Error Not "Manifest"
¶ 30 Alternatively, for purposes of this analysis only, I will assume that Swetz's evidentiary procedural default might be considered a "manifest error affecting a constitutional right," which he may raise for the first time on appeal. RAP 2.5(a). To fall within this exception, however, not only must the claimed error "implicate[ ] a constitutional interest as compared to another form of trial error," but also it must be "manifest"; the trial record must be sufficiently complete such that we can determine whether the asserted error "actual[ly] prejudice[d]" the appellant by having "practical and identifiable consequences [at] trial." State v. O'Hara, 167 Wash.2d 91, 98-99, 217 P.3d 756 (2009) (citation omitted). But "[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (citing State v. Riley, 121 Wash.2d 22, 31, 846 P.2d 1365 (1993)); see also State v. Louthan, 158 Wash.App. 732, 242 P.3d 954, 961-62 (2010).
¶ 31 Because Swetz failed to object to the search and failed to move to suppress the evidence at trial, the State had neither need nor opportunity to present evidence of the circumstances surrounding the warrantless vehicle search incident to Swetz's arrest and the seizure of various items of evidence from different locations in Swetz's car. Nor did the State have an opportunity to present alternative theories to justify the later-contested search. Consequently, the trial court did not make a ruling or enter findings of *811 fact and conclusions of law addressing the admissibility of evidence, to which Swetz could have assigned error on appeal and which we could now review against the backdrop of a fully developed record.[11]See CrR 3.6(a)[12]; ER 103(a); see also State v. Guloy, 104 Wash.2d 412, 421, 705 P.2d 1182 (1985); State v. Harris, 154 Wash.App. 87, 102-04, 224 P.3d 830 (2010) (Quinn-Brintnall, J. dissenting).
¶ 32 "`The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial.'" O'Hara, 167 Wash.2d at 98, 217 P.3d 756 (quoting State v. Scott, 110 Wash.2d 682, 685, 757 P.2d 492 (1988)). RAP 2.5(a) is not meant to "`permit[ ] every possible constitutional error to be raised for the first time on appeal'" because that "`undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts.'" McFarland, 127 Wash.2d at 333, 899 P.2d 1251 (quoting State v. Lynn, 67 Wash.App. 339, 344, 835 P.2d 251 (1992)).
¶ 33 Because Swetz failed to object to the search and to make a record below, he has not demonstrated that the alleged error is manifest. Therefore, I would adopt Division One's rationale in Roberts:
Because the defense did not file a CrR 3.6 motion to suppress . . . the record is not sufficient to determine the merits of [appellant's] claim that the [search was unlawful]. . . . Accordingly, we conclude the record is insufficient to address the merits of whether [there] was a valid basis for the search.
State v. Roberts, 158 Wash.App. 174, 240 P.3d 1198, 1202-03 (2010) (citing McFarland, 127 Wash.2d at 338, 899 P.2d 1251); see also State v. Naillieux, 158 Wash.App. 630, 241 P.3d 1280, 1283, (2010) (appellant's failure to raise constitutional errors at trial left the State with no "opportunity to address an objection" and the trial court with "no opportunity to correct an error").[13]
¶ 34 For the reasons explained in Roberts and Naillieux, I would hold that Swetz cannot *812 raise this alleged constitutional error for the first time on appeal because he has not shown that it is "manifest."

II. LAWFUL SEIZURES OF EVIDENCE
¶ 35 I recognize, however, that the Supreme Court may not agree with our analysis in Millan and may hold, instead, that a defendant such as Swetz can challenge on appeal a vehicle search incident to arrest that he failed to preserve below. Therefore, I respectfully dissent on the alternative grounds that Osterdahl lawfully seized the evidence from Swetz's vehicle and that this evidence was admissible under our state constitution. More specifically, I disagree with the majority's characterization of Osterdahl's seizing various items of evidence from Swetz's car at different times as the product of a single, unlawful, warrantless, vehicle search incident to Swetz's arrest for marijuana possession. The majority conflates Osterdahl's initial open-view seizure of marijuana from the passenger seat and pipes from floorboard of Swetz's car with additional contraband found during an extensive subsequent vehicle search incident to his arrest for possession of this initial open-view contraband.
¶ 36 Because Swetz did not move to suppress the evidence at trial, the State had neither the opportunity nor the incentive to make a record that could illustrate fully and accurately the sequence of events that produced the evidence. Consequently, the record before us on appeal is inadequate to resolve the highly fact-intensive legal search and seizure issues.
¶ 37 In contrast, Osterdahl's police report[14] contains a detailed account of the sequence of events, which the State would likely have elicited had Swetz requested a suppression hearing. This report provides a glimpse of the type of record the State could have made had Swetz objected to the admissibility of the evidence at trial. Therefore, at the very least, we should remand for a full evidentiary hearing on the suppression issue that Swetz now raises for the first time on appeal and for which no record has yet been made.

A. "Open View" [15]
¶ 38 The majority concludes that Osterdahl unlawfully seized the clear plastic zip-loc *813 "baggie" of marijuana on the passenger seat, Verbatim Report of Proceedings (VRP) at 28, and the glass pipes on the driver's side floorboards, all of which were in "open view"[16] through the driver's side door that Swetz had left open. Majority at 807. I disagree. Assuming, without agreeing, that Swetz can object to the admissibility of this evidence for the first time on appeal, the baggie of marijuana in open view on the seat adjacent to the open car door and the glass pipes in open view on the driver's side floorboard were not illegally seized and, therefore, not subject to suppression on constitutional or other grounds.

1. No pre-arrest vehicle search
¶ 39 Swetz initiated contact with Osterdahl when Swetz walked up to the driver's side door of Osterdahl's vehicle, Osterdahl rolled down his window, and Swetz reported that he (Swetz) had seen a bear roaming the streets, which Osterdahl confirmed. During that conversation, Osterdahl noticed a "strong odor of burnt marijuana" emanating from Swetz. VRP at 27. Osterdahl then exited his patrol vehicle and accompanied Swetz back to Swetz's vehicle. Through the open driver's door of Swetz's car, Osterdahl saw a plastic baggie of marijuana on the front passenger seat and two multi-colored glass pipes on the driver's side floorboard, which appeared to contain both burnt and fresh marijuana. See VRP at 16, 28; Police Report at 2-3. Osterdahl collected these items, and placed Swetz under arrest for marijuana possession.[17]See Police Report at 3.
¶ 40 Article I, section 7 of our state constitution does not require suppression of the marijuana in Osterdahl's "open view" on the passenger seat because it was not the product of an unlawful warrantless search; on the contrary, there was no search that led to the seizure of this initial evidence. Under the "open view" doctrine, an officer does not perform a search if he is present in a constitutionally non-protected area and observes an object that is exposed to the public. Seagull, 95 Wash.2d at 901-02, 632 P.2d 44 (citation omitted); see also State v. Perez, 41 Wash.App. 481, 483, 704 P.2d 625 (1985); see also Louthan, 242 P.3d at 962. Thus, in constitutionally non-protected areas, "`if an officer. . . looks into a car from the outside and *814 sees . . . contraband in the car, he has not searched the car.'" State v. Gibson, 152 Wash.App. 945, 955, 219 P.3d 964 (2009) (quoting State v. Kennedy, 107 Wash.2d 1, 10, 726 P.2d 445 (1986)).
¶ 41 Swetz parked his car in a public skate park, which is presumptively a constitutionally non-protected area, where he had no reasonable expectation of privacy as to what others could see in open view inside his car, especially when he left the driver's side door of his vehicle open. From outside Swetz's car, Osterdahl saw the marijuana on the passenger seat and the glass pipes on the driver's side floor. This open view observation of contraband was not a search. Seagull, 95 Wash.2d at 901-02, 632 P.2d 44.

2. Initial seizure
¶ 42 Nevertheless, an officer may seize contraband in "open view" only if: (1) the officer has probable cause to believe that it is evidence of a crime, and (2) the officer is "faced with `emergent or exigent circumstances regarding the security and acquisition of incriminating evidence' that made it impracticable to obtain a warrant." Gibson, 152 Wash.App. at 956, 219 P.3d 964 (quoting State v. Smith, 88 Wash.2d 127, 137-38, 559 P.2d 970 (1977)); see also State v. Ozuna, 80 Wash.App. 684, 688, 911 P.2d 395 (1996) ("Even if the officers reasonably believe that items seen inside a vehicle are stolen . . . there must be exigent circumstances making it impractical to obtain a search warrant.") (citing State v. Patterson, 112 Wash.2d 731, 733-36, 774 P.2d 10 (1989)).
¶ 43 Osterdahl had probable cause to believe that the marijuana and the glass pipes he observed in open view on the seat and floor of Swetz's car were evidence of a crime. Not only did Osterdahl make these visual observations, but earlier Swetz had "bent over and leaned into" Osterdahl's vehicle and Osterdahl had detected a strong odor of marijuana emanating from Swetz's person. Police Report at 2. Swetz even admitted to Osterdahl that he (Swetz) had been smoking "pot." Police Report at 2.
¶ 44 In addition, the following exigent circumstances[18] were present:[19] Osterdahl was apparently alone on patrol, with no back up. Swetz was not under arrest when Osterdahl observed the marijuana and glass pipes in open view in Swetz's car. See Police Report at 2-3. Thus, Swetz was an unsecured suspect who presented "a risk of flight or destruction of evidence." State v. Mierz, 72 Wash.App. 783, 791-92, 866 P.2d 65 (1994) (citing State v. Terrovona, 105 Wash.2d 632, 644, 716 P.2d 295 (1986)), aff'd, 127 Wash.2d *815 460, 901 P.2d 286 (1995). Earlier that night, Osterdahl had observed Swetz with another adult male who was no longer present during this later encounter. When Osterdahl asked where his companion was, Swetz replied that his companion was pursuing the bear because they thought it would be "neat to wrestle a bear." Police Report at 2. Osterdahl had no way of knowing whether Swetz's companion was still pursuing the bear or likely to return to Swetz's vehicle, either alternative presented a possible threat to Osterdahl's safety or to the preservation of the contraband evidence.[20] In my view, these exigent circumstances justified Osterdahl's seizure of the contraband in "open view" before placing Swetz under arrest, without first attempting to obtain a warrant.

B. Subsequent Warrantless Vehicle Search Incident to Arrest
¶ 45 Assuming, without conceding that Swetz can challenge the vehicle search incident to arrest for the first time on appeal, I disagree with the majority's reading of Patton[21] and Valdez[22] that, after Osterdahl arrested Swetz for possession of the marijuana in open view, article I, section 7 of our state constitution required Osterdahl to obtain a warrant before conducting the vehicle search incident to Swetz's arrest. See Majority at 807. Instead, I would distinguish Patton and Valdez by following the rationale of Judge Quinn-Brintnall's majority opinion in Louthan. See Louthan, 242 P.3d at 964-65.
¶ 46 The majority reads Patton and Valdez as holding that article I, section 7 permits warrantless vehicle searches only when there is a threat to: (1) officer safety; or (2) the preservation of evidence of the crime of the arrest. But, as Louthan correctly points out, the facts of Patton are unique: Patton was not a driver or recent occupant of the vehicle searched and no nexus existed between Patton, the reason for his arrest, and the vehicle. Louthan, 242 P.3d at 964 (citing Patton, 167 Wash.2d at 395, 219 P.3d 651). In contrast, Swetz was the driver of the vehicle that Osterdahl searched following Swetz's arrest. Moreover, Osterdahl arrested Swetz for marijuana possession after smelling a strong odor of burnt marijuana on Swetz's person and observing marijuana in open view on the passenger seat of Swetz's vehicle. Patton does not apply to the facts here.
¶ 47 In Valdez, "the State ha[d] not shown that it was reasonable to believe that evidence relevant to the underlying crime might be found in the vehicle." Valdez, 167 Wash.2d at 778, 224 P.3d 751. In contrast, based on Swetz's odor of recent marijuana smoking and the marijuana and pipes in open view through the open door of Swetz's car, Osterdahl reasonably believed that Swetz's car contained evidence of marijuana possession, the crime for which Osterdahl had just arrested Swetz. Thus, Osterdahl's warrantless search of Swetz's vehicle incident to arrest was not a "fishing expedition in which the police thought they might discover evidence of some unrelated crime." State v. Wright, 155 Wash.App. 537, 555, 230 P.3d 1063, review granted, 169 Wash.2d 1026, 241 P.3d 413 (2010). Nor was the search "a police entitlement" that gave Osterdahl the unbridled permission to search Swetz's vehicle simply by virtue of arresting Swetz. Arizona v. Gant, 556 U.S. ___, 129 S.Ct. 1710, 1721, 173 L.Ed.2d 485 (2009).
¶ 48 Instead, the search was a minimal intrusion on Swetz's privacy rights under our constitution. Swetz had parked his vehicle and left the door open at a public skate park, which diminished his reasonable expectation of privacy in his vehicle and its contents.[23] Through this open door, Osterdahl had observed *816 the marijuana in open view on the passenger seat of Swetz's vehicle after only moments earlier having smelled a strong odor of burnt marijuana on Swetz's breath and person. Thus, Osteradhl's warrantless search was neither "arbitrary" nor "unreasonable." State v. Houser, 95 Wash.2d 143, 148, 622 P.2d 1218 (1980) (citation omitted). Accordingly, I respectfully disagree with the majority's holding that the search of the vehicle incident to Swetz's arrest and seizure of evidence from inside the vehicle was unlawful.
¶ 49 I would hold that Swetz failed to preserve his evidentiary challenge for appeal and affirm. Alternatively, I would remand for a full evidentiary hearing on the suppression issues that Swetz now seeks to raise for the first time on appeal in the absence of a record to enable our review.
NOTES
[1] The police report the dissent relies on states that Officer Osterdahl also saw glass pipes on the floor of the car. As discussed below, the report was not admitted into evidence. At trial, Officer Osterdahl testified that he found the glass pipes while searching the car after arresting Swetz.
[2] Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Diazepam is a depressant commonly known as Valium.
[4] Swetz's trial took place in June 2009. Patton was decided on October 22, 2009, and Buelna Valdez was decided on December 24, 2009. See Buelna Valdez, 167 Wash.2d at 761, 224 P.3d 751; Patton, 167 Wash.2d at 379, 219 P.3d 651.
[5] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause. . . ." Article I, section 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."
[6] While the dissent argues that Patton and Buelna Valdez are distinguishable because neither involved a case where the officer was searching for evidence of the crime of arrest, we are not persuaded that these factual distinctions are grounds for ignoring clear language from our Supreme Court regarding the proper scope and application of the search incident to arrest exception under article I, section 7.
[7] The dissent cites State v. Louthan, 158 Wash. App. 732, 242 P.3d 954 (2010), in its discussion of the open view doctrine. While Louthan accurately describes the open view doctrine, it then concludes that an officer's open view observation of contraband inside a car justified the officer's intrusion into the vehicle and seizure of the contraband. Louthan, 158 Wash.App. at 746, 242 P.3d 954. Although Louthan relies on State v. Seagull, 95 Wash.2d 898, 632 P.2d 44 (1981), Seagull does not support the proposition that an open view observation alone justifies a warrantless seizure. In Seagull, an officer looked into a greenhouse and observed a plant that the officer believed was marijuana. Seagull, 95 Wash.2d at 900, 632 P.2d 44. The officer then obtained a warrant to enter the greenhouse and seize the plant. Seagull, 95 Wash.2d at 900, 632 P.2d 44. On appeal, the defendant argued that the officer's initial observation was not an open view observation and our Supreme Court concluded the officer viewed the plant from a lawful vantage point. Seagull, 95 Wash.2d at 901-05, 632 P.2d 44.
[8] Swetz concedes that the Fourth Amendment of the federal constitution and Arizona v. Gant, 556 U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), permitted Officer Osterdahl's warrantless search of his (Swetz's) vehicle incident to his arrest for marijuana possession.
[9] RAP 2.5(a) provides:

(a) Errors Raised for First Time on Review. The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court:
(1) lack of trial court jurisdiction,
(2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.
A party or the court may raise at any time the question of appellate court jurisdiction. A party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground. A party may raise a claim of error which was not raised by the party in the trial court if another party on the same side of the case has raised the claim of error in the trial court.
[10] ER 103(a) provides:

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context; or
(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
[11] The majority states that Swetz did not challenge Officer Osterdahl's vehicle search because our Supreme Court handed down State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009) and State v. Valdez, 167 Wash.2d 761, 224 P.3d 751 (2009) after Swetz's trial and conviction. See Majority at 804 n. 4. Even assuming this fact to be true, it is irrelevant to our analysis because Swetz did not raise any kind of suppression challenge whatsoever below, much less one based on Valdez and Patton. Thus, the timing of our Supreme Court's decisions does not excuse Swetz's complete failure to raise any suppression challenge in a timely manner in the trial court.
[12] CrR 3.6(a) provides, in part:

(a) Pleadings. Motions to suppress physical, oral or identification evidence, other than motion pursuant to rule 3.5, shall be in writing supported by an affidavit or document setting forth the facts the moving party anticipates will be elicited at a hearing, and a memorandum of authorities in support of the motion.
(emphasis added).
[13] As Division Three of our court recently noted in Naillieux:

We sit as a court of review which, of course, means that we do not preside over trial proceedings de novo. Our function is to review the validity of claimed errors by a trial judge who presided over a trial. That function assumes that counsel preserve the error by objecting to something the trial judge did or did not do. We do not, and should not, be in the business of retrying these cases. It is a wasteful use of judicial resources. And it encourages skilled counsel to save claims of constitutional error for appeal so a defendant can get a new trial and second chance at a not guilty verdict if the first trial does not end in his favor. Most errors in a criminal case can be characterized as constitutional.
Mr. Naillieux is entitled to a new trial only if his claimed errors are manifest constitutional errors. Even if the claimed error is constitutional in nature, we will not review it unless it is also manifest. An error is manifest when the defendant shows "the asserted error had practical and identifiable consequences in the trial of the case." "`[M]anifest' means unmistakable, evident or indisputable, as distinct from obscure, hidden or concealed. `Affecting' means having an impact or impinging on, in short, to make a difference. A purely formalistic error is insufficient." We conclude that, while Mr. Naillieux's claims of manifest constitutional error might well implicate constitutional due process rights, they are not manifest.
State v. Naillieux, 241 P.3d at 1284(quoting State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992) (internal citations omitted)).
[14] The State marked Osterdahl's police report for identification only and used it to refresh his recollection during the CrR 3.5 hearing on the admissibility of Swetz's statements. Swetz also asked Osterdahl to read from his report to refresh his recollection during cross-examination. Although not accepted into evidence below or officially designated as Clerk's Papers on appeal, this police report is included in the record before us on appeal, immediately following Exhibit 3. And it is relevant to our consideration of the issues before us on appeal, especially in light of the fact that both Swetz and the State used it below, despite its not having been officially admitted into evidence.

The majority criticizes my referencing the police report because it was not admitted into evidence and "does not conclusively establish the sequence of events." Majority at 807. I agree. But I do not claim that the police report establishes any facts at all; nor is that my purpose in referencing it here, which, with all due respect, the majority misconstrues.
On the contrary, the police report provides a glimpse into the record that the State might have made had Swetz timely objected to the admissibility of the evidence at trial and requested a CrR 3.6 evidentiary hearing. If Swetz had moved to suppress below, then the State would have had an opportunity to prove the true sequence of events surrounding the search and seizure of the evidence. But because Swetz failed to raise any suppression challenge whatsoever, we are, as the majority rightly points out, left with an incomplete and vague record, with the police report providing the only clues as to what the State's proof might have been.
I agree with the majority that the record is incomplete for us to know "the sequence of events" pertinent to our review of the suppression issues that Swetz raises for the first time on appeal. Majority at 807. But the inadequate record is not the fault of the State, which should not have its evidence now suppressed for lack of supporting facts. Instead, the lack of a record is directly attributable to Swetz's procedural default in the trial court. In my view, this underdeveloped record is reason for refusing to entertain Swetz's untimely suppression argument on appeal; in the alternative, it should prompt our remand to the trial court for development of a record that would allow our review of the issues that Swetz now raises for the first time on appeal.
[15] The majority asserts that we should not reach the possible applicability of the open view doctrine because the State has not attempted to show that the open view exception applies. Indeed, as the majority notes, the State has conceded that Osterdahl's search was unlawful if we hold that (1) Swetz can raise his suppression challenge for the first time on appeal, and (2) an officer's reasonable suspicion that evidence of the crime of arrest will be found in the vehicle is insufficient to support a warrantless vehicle search incident to arrest under our constitution. See Majority at 806; Br. of Resp't at 6. But we are free to reject the State's concession. See, e.g., State v. Woodruff, 137 Wash.App. 127, 133, 151 P.3d 1086 (2007). The majority's acceptance of the State's concession does not foreclose applicability of the open view doctrine here. Moreover, we cannot know whether the State would still make this concession if Swetz had made a timely suppression challenge below, thus, providing the State the opportunity to establish a record demonstrating open view and then to argue this point to the trial court.
[16] The "open view" doctrine and the closely related "plain view" doctrine are exceptions to the general rule that warrantless searches are per se unreasonable. State v. Gibson, 152 Wash. App. 945, 954, 219 P.3d 964 (2009) (citing State v. Seagull, 95 Wash.2d 898, 632 P.2d 44 (1981)). The "open view" doctrine applies when an officer is present in a constitutionally non-protected area. Seagull, 95 Wash.2d at 901-02, 632 P.2d 44 (citation omitted). In these constitutionally non-protected areas, "[t]he object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution." Seagull, 95 Wash.2d at 902, 632 P.2d 44 (quoting State v. Kaaheena, 59 Haw. 23, 29, 575 P.2d 462 (1978)).

Because Swetz's vehicle was located in a skate park, a constitutionally non-protected public area, the "open view" doctrine applies (the "plain view" doctrine, in contrast, comes into play if the officer has lawfully intruded into a location where there otherwise is a reasonable expectation of privacy). Seagull, 95 Wash.2d at 901, 632 P.2d 44; see also State v. Barnes, 158 Wash.App. 602, 243 P.3d 165, 170-71 (2010).
[17] Only after arresting Swetz did Osterdahl search Swetz's car incident to his arrest. During the vehicle search, Osterdahl found and seized more marijuana and glass pipes, as well as Diazepam (commonly known as "Valium"). VRP at 49. It was this evidencethe other quantity of marijuana, the other glass pipes, and the Diazepam that were seized during Osterdahl's warrantless vehicle search incident to Swetz's arrest. The State charged Swetz with unlawful possession of Diazepam, count I, distinct from count II, possession of marijuana. It is not clear from the record on appeal whether count II was based on the initial bag of marijuana seized in open view on the passenger seat before Swetz's arrest or on the later marijuana seized during the subsequent warrantless vehicle search incident to that arrest or both.
[18] I agree with Chief Justice Madsen's assessment in her dissent in State v. Tibbles, 169 Wash.2d 364, 373-79, 236 P.3d 885 (2010), that applying the State v. Terrovona, 105 Wash.2d 632, 716 P.2d 295 (1986), exigent circumstances factors involving the warrantless search of a home to cases involving evidence seized from an automobile is an unworkable departure from prior case law. Tibbles, 169 Wash.2d at 374-75, 236 P.3d 885 (Madsen, C.J., dissenting). Accordingly, as the majority recently held in Louthan, similarly, here, we should neither consider nor apply the Terrovona factors in this case, which involves no search and seizure of contraband in open view. Louthan, 242 P.3d at 963 n. 5.
[19] The majority counters that many, if not all, of these exigent circumstances, revealed thus far only in the police report, are not present in the record. See Majority at 808-09. I agree. But as I noted in footnote 14, we cannot know the truth about these exigent circumstances because, as a result of Swetz's failure to challenge the admissibility of the evidence below, there was no evidentiary hearing to establish these facts. In my view, the majority's discomfort with the lack of established detailed facts in the record underscores the need for us to wait to review Swetz's suppression arguments only after the trial court has an opportunity to conduct an evidentiary hearing on remand.

As the Third Circuit Court of Appeals has noted:
. . . For there to be reversible error, it is mandatory for the appellant properly to identify the error to the trial court and to suggest a legally appropriate course of action. The reasons for this requirement go to the heart of the common law tradition and the adversary system. It affords an opportunity for correction and avoidance in the trial court in various ways: it gives the adversary the opportunity either to avoid the challenged action or to present a reasoned defense of the trial court's action; and it provides the trial court with the alternative of altering or modifying a decision or of ordering a more fully developed record for review.
Pfeifer v. Jones & Laughlin Steel Corp., 678 F.2d 453, 457 n. 1 (1982) overruled on other grounds by 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983).
[20] See State v. Young, 28 Wash.App. 412, 419, 624 P.2d 725 (1981), rev. denied. 95 Wash.2d 1024, ("[C]ourts have found exigent circumstances. . . where a defendant is in custody but his accomplices or others acting for him have not yet been apprehended") (citation omitted). And here, unlike in Young, Swetz was not yet in custody.
[21] State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009).
[22] State v. Valdez, 167 Wash.2d 761, 224 P.3d 751 (2009).
[23] See Gibson, 152 Wash.App. at 955, 219 P.3d 964 (citing Young, 28 Wash.App. at 416, 624 P.2d 725) (citing United States v. Chadwick, 433 U.S. 1, 12-13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)).